# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4052 | **DATE** | 11/14/2001 |
| **CASE TITLE** | SHARON CONGRESS vs. BP PRODUCTS NORTH AMERICA, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held and continued to January 2, 2002 at 9:00 a.m. Status hearing set for 12/11/01 is vacated. Defendant's motion for leave to file amended answer is granted. Parties agreed motion for protective order is granted. Defendant's motion for summary judgment to be filed by 11/28/01. Plaintiff's response to be filed by 12/12/01. Defendant's reply to be filed by 12/19/01. Enter Memorandum Opinion and Order. Defendant's motion to dismiss counts IV and V of plaintiff's second amended complaint [30-1] is denied with respect to Count IV and granted with respect to Count V.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | NOV 1 6 2001 | |
| | Notified counsel by telephone. | | date docketed | 46 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | IS | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| | | | date mailed notice | |
| LG | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHARON CONGRESS,

    Plaintiff,

v.

AMOCO OIL COMPANY,

    Defendant.

Case No. 00 C 4052

Hon. John W. Darrah

DOCKETED
NOV 1 6 2001

## MEMORANDUM OPINION AND ORDER

Defendant Amoco Oil Company moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Counts II, IV and V of Plaintiff Sharon Congress's Second Amended Complaint. Amoco subsequently withdrew its motion to dismiss with respect to Count II of the Second Amended Complaint. (Def. Amoco Oil Company's Reply Br. Supp. Mot. Dismiss at 1 n.1.) For the reasons set forth below, Defendant Amoco Oil Company's Motion to Dismiss Counts IV and V of Plaintiff's Second Amended Complaint [30-1] is denied in part and granted in part.

## LEGAL STANDARD

When considering a motion to dismiss, well-pleaded allegations in the complaint are accepted as true. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997). Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998). Dismissal is proper only when it appears beyond doubt that Plaintiff can prove no set of facts to support the allegations in his or her claim. *Strasburger v. Board of Education*, 143 F.3d 351, 359 (7th Cir. 1998).

-1-



"Although the Federal Rules of Civil Procedure do not require a plaintiff 'to set out in detail the facts upon which he bases his claim'" [citation omitted], he must "set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery.'" *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985). A complaint will not avoid dismissal if it contains "bare legal conclusions" absent facts outlining the basis of the claims. *Perkins v. Silverstein*, 939 F.2d 463, 467 (7th Cir. 1991).

## BACKGROUND

Plaintiff Sharon Congress ("Congress") has filed a five-count Second Amended Complaint against Defendant Amoco Oil Company ("Amoco"), alleging a federal claim for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991 (Counts I and II), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (Counts III and IV). Count V asks for a declaratory judgment that Congress timely filed all claims against Amoco and exhausted all of her administrative remedies or that she be allowed to file those claims and litigate them in this case after such filing. For purposes of this Motion to Dismiss, the following allegations are taken as true.

Sharon Congress, an African-American woman, was hired by Amoco to work as a Customer Service Representative on March 17, 1999, at 1114 Riverboat Drive, Joliet, Illinois. (Compl. ¶ 10.) She was assigned to work forty hours per week. (Compl. ¶ 10.) At all relevant times, Congress performed her job duties in a satisfactory manner and was available to work forty hours per week. (Compl. ¶ 12.)

On or about October 1, 1999, Amoco began discriminating against Congress, on the basis of race, by reducing her hours from about forty hours per week to about six hours per week. (Compl.

¶ 11.) Similarly situated non-African-American employees did not have their hours reduced in a similar manner. (Compl. ¶ 11.) Furthermore, there was sufficient work available to maintain Congress's previous work schedule of forty hours per week. (Compl. ¶ 13.)

On or about the week of January 10, 2000, Amoco began discriminating against Congress by not reasonably accommodating her thyroid and heart conditions. (Compl. ¶ 14.) Specifically, Amoco required Congress to violate her doctor's orders that she avoid contact with others during the seventy-two-hour period following radiation therapy for her thyroid condition by ordering her to report to work under threat of termination. (Compl. ¶ 19.) Also, even though it was aware that Congress had to take prescribed medication with food during work hours and Congress asked for meal breaks so that she could do so, Amoco required her to work seven-and-a-half continuous hours or more without a meal break. (Compl. ¶ 20.)

Congress was disabled or regarded as disabled by Amoco within the meaning of the ADA at all relevant times. (Compl. ¶ 15.) Amoco was aware of Congress's disability and/or perceived her to be disabled. (Compl. ¶ 16.) Congress was able to perform the essential functions of her job with or without a reasonable accommodation. (Compl. ¶ 17.)

On December 14, 1999, Congress filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") and the EEOC. (Compl. ¶ 24.) After filing the charge, Congress was verbally harassed by one or more of Amoco's supervisors because of her race and/or disability. (Compl. ¶ 21.) These supervisors verbally humiliated Congress in the presence of her co-workers and, on one occasion, in the presence of her five-year-old daughter. (Compl. ¶ 22.) Amoco retaliated against her for filing a discrimination charge against it. (Compl. ¶ 22.) As a result of the reduced work hours and the other discriminatory conduct, Congress was subjected to intolerable

work conditions and resigned. (Compl. ¶ 23.)

On or about March 11, 2000, Congress contacted the IDHR investigator assigned to her case, Edwin Colby ("Colby"). (Compl. ¶ 24.) Congress told him the specific details of how Amoco had harassed because of her disability since she filed the charge of discrimination and that she had quit her job because of it. (Compl. ¶ 24.) She told Colby that she would like to sue Amoco, and he advised her that he would get her a right-to-sue letter. (Compl. ¶ 24.)

When Congress picked up her right-to-sue letter on or about April 27, 2000, she noticed that her ADA claim was not on the right-to-sue letter. (Compl. ¶ 25.) Congress reminded Colby that Amoco had harassed her because of her disability. (Compl. ¶ 25.) Colby told her that she needed to amend her original charge, but he would not be able to file it with the IDHR or the EEOC. (Compl. ¶ 25.) Colby told her that the proper place to amend her charge was at the federal court building. (Compl. ¶ 25.)

On July 5, 2000, Congress went to the federal court building and attempted to amend her charge to include the ADA claim by personally filing it with the Clerk of the United States District Court. (Compl. ¶ 26.) She explained Colby's directions to three staff persons at the Clerk's office. (Compl. ¶ 26.) The employee filing the amended complaint directed Congress to fill out a blank federal court complaint form and add the ADA claim. (Compl. ¶ 26.) Congress followed this direction and filed the complaint on July 5, 2000. (Compl. ¶ 26.)

## ANALYSIS

Amoco has moved to dismiss Count IV of the Second Amended Complaint arguing (1) that there is no specific allegation of retaliation in a previously filed administrative charge and (2) that Congress did not plead a *prima facie* case of ADA retaliation. Amoco has moved to dismiss Count

-4-

V, arguing that a declaratory judgment is inappropriate because Congress is not asking the Court to declare a judgment or relief between the parties but, rather, to make a preliminary determination that equitable tolling applies to her case.

A retaliation claim may be proved by indirect evidence under the burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001). In order to plead a *prima facie* case of retaliation under the ADA, Congress must plead that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse employment action. *Kersting*, 250 F.3d at 1117.

Amoco argues that Congress's complaint is devoid of any allegations of retaliation relating to any statutorily protected expression under the ADA. Although the Seventh Circuit has not reached the issue, informal complaints of discrimination constitute protected expression for purposes of retaliation and do not require any filing with the EEOC. *See, e.g., Lambert v. Ackerly*, 180 F.3d 997, 1002-03 (9th Cir. 1999); *EEOC v. Romeo Cmty. Schs.*, 976 F.2d 985, 989 (6th Cir. 1992) (holding plaintiff's complaint to school district that she was being paid less than male custodians constituted protected expression for retaliation claim); *EEOC v. White & Sons Enters.*, 881 F.2d 1006, 1011 (11th Cir. 1989) (holding "unofficial complaints expressed by the women to their employees about unequal pay constituted an assertion of rights protected under" the Fair Labor Standards Act and Title VII); *Love v. Re/Max of Am., Inc.*, 738 F.2d 383, 385 (10th Cir. 1984) (holding female employee's memorandum to the president of her company requesting to be paid at the same rate as male employees constituted protected expression under Title VII).

Congress has pled a *prima facie* case of retaliation under the ADA. Congress has alleged that

she complained about having to work after receiving radiation therapy for her thyroid condition and that she repeatedly asked for a meal break in order to take prescribed medication that had to be taken with food and was refused one. Congress also alleges that after informing Amoco of her disability and requesting accommodations, she was subjected to verbal harassment by her supervisors and subjected to intolerable working conditions such that she had to quit her job.

Congress's requests for accommodations and complaint about having to work after radiation therapy constitute protected expression under the ADA. *See Silk v. City of Chicago*, 194 F.3d 788, 800-01 (7th Cir. 1999) (holding that a request for an accommodation is protected expression); *Garza v. Abbott Labs.*, 940 F. Supp. 1227, 1244 (N.D. Ill. 1996) (same).

Furthermore, Congress has alleged that after she engaged in the protected expression, she suffered an adverse employment action, constructive discharge. Congress alleges a causal link between the requests for the accommodations and the constructive discharge. She alleges that the intolerable working conditions that led to her constructive discharge were caused by the verbal harassment by Amoco's supervisors because of her disability. Thus, Congress has pled a *prima facie* case of retaliation under the ADA.

Amoco also argues that Congress is asking this Court "to bypass the procedural mechanism set up to analyze the relevant facts and law and to make a declaratory judgment that [she] is entitled to equitable relief." (Def.'s Reply Supp. Mot. Dismiss at 4-5.) Therefore, it argues, a declaratory judgment action is inappropriate, and Count V should be dismissed.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether

or not further relief is or could be sought." 28 U.S.C. § 2201 (2001). A declaratory judgment is appropriate when it "will clarify and settle the disputed legal relationships and afford relief from the uncertainty and controversy that created the issues". *Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578 (7th Cir. 1994) (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir 1987)). A court should address the following five considerations:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*";
> (4) whether the use of a declaratory judgment action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy that is better or more effective.

*Nucor Corp.*, 28 F.3d at 579 (citing *Nationwide Mut. Fire Ins. Co. v. Willenbrink*, 924 F.2d 104, 105 (6th Cir. 1991) (citations omitted)).

Clearly, in the instant case, there is an actual controversy between the parties. While Congress has anticipated a possible affirmative defense in pleading Count V of the complaint, it is clear that this count was not pled for the purpose of "procedural fencing". There would be no friction between this Court and state court because there is no pending state action.

However, a declaratory judgment would not settle the controversy between the parties, whether Amoco discriminated against Congress based on her race and alleged disability. Furthermore, Congress has an alternative remedy that is equally effective. The issues of whether Congress's attempts to amend her EEOC charge were sufficient such that equitable tolling applies or whether the ADA claim, as pled, raises a reasonable inference that the ADA filing requirements were met are issues that will have to be determined whether or not Count V is dismissed. Finally,

the declaratory judgment action would not serve a useful purpose in clarifying the legal relations in issue because such a judgment would not determine whether Amoco was liable for allegedly discriminating against Congress. Therefore, Count V of the Second Amended Complaint is dismissed.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Counts IV and V of Plaintiff's Second Amended Complaint [30-1] is denied with respect to Count IV and granted with respect to Count V.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: November 14, 2001